**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| IN RE SUZANNE ESER, | ) | Chapter 7 |
|  | ) | Case No. 24-bk-10976-JEB |
|     Debtor, | ) | (Bankruptcy Court) |
| _____ | ) |  |
|  | ) |  |
| SUZANNE ESER, | ) |  |
|  | ) |  |
|     Appellant, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | No. 1:25-cv-10505-JEK |
| DONALD LASSMAN, Chapter 7 Trustee, | ) | (District Court) |
| and MASSACHUSETTS INSTITUTE OF | ) |  |
| TECHNOLOGY FEDERAL CREDIT UNION, | ) |  |
|  | ) |  |
|     Appellees. | ) |  |
| _____ | ) |  |

## <u>MEMORANDUM AND ORDER</u>

**KOBICK, J.**

This appeal of an order of the United States Bankruptcy Court for the District of Massachusetts arises out of a dispute among the debtor, appellant Suzanne Eser; the trustee, appellee Donald Lassman; and a creditor, appellee Massachusetts Institute of Technology Federal Credit Union (the "Credit Union"). After Eser defaulted on her mortgage in 2020, the Credit Union foreclosed on her home in 2023. When it learned that the proceeds from the foreclosure sale were greater than the debt Eser owed, the Credit Union initiated an interpleader action in Massachusetts Superior Court in April 2024 to determine how to allocate the surplus funds.

Through various filings in Massachusetts state courts over the past three years, Eser has attempted to stop the foreclosure and her resulting eviction from her home. After those avenues failed, Eser petitioned for bankruptcy protection pursuant to Chapter 7 of the U.S. Bankruptcy

Code in May 2024. Lassman was named trustee of the estate. Soon after the bankruptcy proceedings commenced, the Credit Union and another creditor, non-party Larkin Corp., filed proofs of claim to the estate. Following these filings, Lassman and the Credit Union reached a settlement agreement in connection with the interpleader action. Pursuant to the agreement, the Credit Union would transfer the surplus funds from the foreclosure to Lassman, who, as trustee, would pay the Credit Union and Larkin in full satisfaction of their respective proofs of claim. The settling parties anticipated that, after these payments were made, surplus funds would go to Eser. The agreement also required the Credit Union and Lassman to, upon completion of all payments, jointly move for dismissal of the interpleader action on the basis of mootness.

The Bankruptcy Court granted Lassman's motion for approval of the settlement agreement. Eser, proceeding *pro se*, appealed that decision to this Court. Although Eser's brief raises a host of issues, the only question properly before this Court is whether the Bankruptcy Court erred in approving the settlement agreement submitted by the Trustee. Concluding that the Bankruptcy Court did not abuse its discretion in determining that the agreement fell within the bounds of reasonableness, this Court will affirm the Bankruptcy Court's order granting Lassman's motion.

## BACKGROUND

The following facts are recounted based on the record provided on appeal and official documents, the authenticity of which are not disputed by the parties.[1]

---

[1] Pursuant to Fed. R. Bankr. P. 8018(b)(1), Eser, as the appellant, was responsible for preparing and filing an appendix. Because she did not do so, the Trustee, as appellee, filed one with his brief pursuant to Rule 8018(b)(2). *See* ECF 29-1. The Court relies on that appendix and, where necessary, the full Bankruptcy Court Record, ECF 4, and the dockets from other cases implicated by this appeal.

## I.    Foreclosure and Eviction Proceedings.

Eser purchased residential real property at 24 Endicott Street in Peabody, Massachusetts in May 1998 ("the Property"). ECF 29-1, at 18, 118. On July 6, 2006, Eser executed a mortgage on the Property with Members Mortgage Company, Inc., which in turn assigned the mortgage to the Credit Union the following day. *Id.* at 18, 98-119. On November 6, 2019, Eser executed two additional mortgages on the Property with Larkin. *Id.* at 18; *see* ECF 28, at 26, ¶ 16.

On February 14, 2020, the Credit Union sent Eser a notice of default, which, she alleges, failed to timely reach her. ECF 28, at 20, ¶ 1; *see also* April 14, 2023 Order, *Eser v. Mass. Inst. of Tech. Fed. Credit Union*, No. 2377CV00356 (Mass. Super. Ct.). On March 11, 2023, she received from the Credit Union a notice of their intention to foreclose on the Property. ECF 28 at 21, ¶ 3; *see* Complaint, *Eser*, No. 2377CV00356. The foreclosure was scheduled to occur on or after April 14, 2023. Complaint, *Eser*, No. 2377CV00356. On April 12, 2023, Eser filed a motion in Essex Superior Court seeking a temporary restraining order to stop the foreclosure from proceeding. *Id.* Her motion argued that "[t]he lender MIT Federal Credit Union has not served the Notice of Foreclosure under the statutes of the law and has not lawfully held the note on my property." *Id.*

On April 14, 2023, after holding a hearing at which both parties were present, the Superior Court denied Eser's motion on the basis that she had not shown a reasonable likelihood of success on the merits and that any irreparable harm had "been brought on by her own actions or inaction." April 14, 2023 Order, *Eser*, No. 2377CV00356. That day, the Credit Union hosted a foreclosure auction on the Property. ECF 28, at 22, ¶ 4; ECF 29-1, at 91, ¶ 8. The Superior Court granted Eser's motion to voluntarily dismiss her case without prejudice six days later. April 20, 2023 Order, *Eser*, No. 2377CV00356.

3

On May 16, 2023, the Credit Union recorded the foreclosure sale of the Property to Vitavera Realty LLC for the price of $563,000. ECF 29-1, at 18; ECF 28, at 25, ¶ 14. Vitavera served Eser with a 14-day notice to quit and a summary process summons on May 19 and June 8, 2023, respectively. Vitavera filed those documents and its complaint in the Massachusetts Housing Court on June 20, 2023. *See* Dkt. No. 1, *Vitavera Realty Llc vs. Eser*, No. 23H77SP003218 (Mass. Hous. Ct.). The Housing Court scheduled a summary process trial for September 1, 2023. August 14, 2023 Order, *Vitavera*, No. 23H77SP003218. The day before trial, Eser moved to continue the trial. The Housing Court denied Eser's motion and, because Eser was not present at trial, entered default judgment awarding Vitavera possession of the Property. September 27, 2023 Order, *Vitavera*, No. 23H77SP003218. On March 29, 2024, the Housing Court issued an order that, among other things, denied Eser's motion for a temporary restraining order or preliminary injunction barring her eviction, affirmed that Eser was required to pay Vitavera for her use and occupancy of the Property, and stayed the eviction pending her compliance with that requirement. Dkt. No. 66, at 7-9, *Vitavera*, No. 23H77SP003218. On May 6, 2024, the Housing Court issued judgment permitting Vitavera to evict Eser from the Property. Dkt. No. 79, *Vitavera*, No. 23H77SP003218.

On May 13, 2024, Vitavera informed Eser that it intended to evict her from the Property the following week, on May 20, 2024. ECF 29-1, at 92, ¶ 17. After an emergency hearing, the Housing Court denied Eser's motion to stop the eviction. Dkt. Nos. 81, 84, *Vitavera*, No. 23H77SP003218. Eser again moved to stay the eviction on July 25, 2024, citing procedural defects with the eviction process. Dkt. No. 90, *Vitavera*, No. 23H77SP003218. After the Housing Court denied her motion, Eser was eventually evicted from the Property. ECF 28, at 32.

## II.    Interpleader Action.

Separately, on April 16, 2024, the Credit Union brought an interpleader action in Essex Superior Court regarding surplus funds from the foreclosure sale of the Property. ECF 29-1, at 18; No. 3, *Mass. Inst. of Tech. Fed. Credit Union vs. Holtjer*, No. 2477CV00371 (Mass. Super. Ct.). The debt owed to the Credit Union on the obligation secured by the mortgage at the time of the foreclosure sale was $382,308.54. ECF 29-1, at 18 and 24, ¶ 3. The $563,000 sale of the Property therefore left surplus funds of $180,691.46 to be distributed among other eligible creditors and, if applicable, to Eser. *Id.* Larkin filed an answer asserting that it was owed a portion of the surplus funds. *Id.* at 18; Dkt. No. 15, *Holtjer*, No. 2477CV00371. Eser also filed an answer that alleged various procedural defects with the foreclosure of the Property and contended that "the surplus funds are incorrect as it [was a] void sale by foreclosure." Dkt. No. 16, at 4-10, *Holtjer*, No. 2477CV00371. Eser did not file, and has not filed, any counterclaims in that action. The interpleader case has otherwise been paused during the pendency of the federal bankruptcy action.

## III.   Bankruptcy Proceedings and the Settlement Agreement.

On May 20, 2024—the day of her anticipated eviction—Eser filed for bankruptcy protection pursuant to Chapter 7, initiating an automatic stay barring creditors from pursuing their claims against her. ECF 2, at 1. Lassman was appointed trustee for Eser's estate. *Id.* at 3, ¶ 22.

On July 2, 2024, the Bankruptcy Court lifted the automatic stay barring Vitavera from exercising rights to the Property. *Id.* at 7, ¶ 72.[2] Later that month, the Trustee filed an objection to Eser's use of the Homestead Exemption on the Property. *Id.* at 8, ¶ 83.[3] The Bankruptcy Court

---

[2] Eser appealed that order to this Court on July 16, 2024. After Eser failed to pay the filing fee, this Court dismissed the appeal. ECF 5, *In re Ezer*, No. 24-cv-11829-LTS (D. Mass.).

[3] The Homestead Exemption can, when properly applied, protect a debtor's home from certain creditors.

5

sustained the objection. *Id.* at 10-11, ¶ 109.[4] Larkin later filed a proof of claim to $24,035.76 plus interest, and the Credit Union filed a proof of claim to $5,177.10 in legal fees from the foreclosure sale. ECF 29-1, at 19; ECF 130, *Eser*, No. 24-bk-10976 (U.S. Bankr. Ct., Mass.) (claims register).

On December 26, 2024, the Trustee moved for the Bankruptcy Court's approval of a settlement agreement between him, as trustee, and the Credit Union in connection with the interpleader action (the "Settlement Agreement"). ECF 2, at 12, ¶ 131; ECF 29-1, at 23-27. Pursuant to that Agreement, the Credit Union would turn over to the Trustee the $180,691.46 surplus funds, plus any interest accrued, from the foreclosure sale. ECF 29-1, at 20, ¶ 2. The Trustee would then pay $5,177.10 and $24,035.76, plus applicable interest, to the Credit Union and Larkin, respectively, in full satisfaction of their proofs of claim and any other claims they may have in the bankruptcy case or the interpleader action. *Id.* ¶¶ 3-4. The Trustee would also join in the Credit Union's motion to dismiss the interpleader action as moot. *Id.* ¶ 5.

On February 19, 2025, after a hearing, the Bankruptcy Court granted the Trustee's motion and approved the Settlement Agreement. ECF 2, at 14, ¶ 151; ECF 29-1, at 3, 16. The court found the Agreement to be within the range of reasonableness because it would resolve the disputed issues in the interpleader action without further litigation. ECF 29-1, at 16. Noting that Eser had not raised a counterclaim in the interpleader action concerning the validity of the foreclosure, the court concluded that Eser's arguments about the lawfulness of the foreclosure were not properly before it on the narrow question of whether to approve the Settlement Agreement. *Id.*

---

[4] Eser's appeal of that order was dismissed by this Court for lack of prosecution. ECF 5, *In re Eser*, No. 24-cv-12428-MJJ (D. Mass.). Eser appealed that ruling to the First Circuit, but the appeal was also dismissed for lack of prosecution. *See* January 7, 2025 Order, *Eser v. Vita Vera Realty LLC*, No. 24-2120 (1st Cir.).

Eser appealed the order approving the Trustee's proposed Settlement Agreement to this Court. ECF 1. After receiving the parties' briefs, the Court held a hearing and took the appeal under advisement. ECF 28, 29, 34.

## JURISDICTION AND STANDARD OF REVIEW

"Generally, a bankruptcy court's order approving a settlement or compromise is a final order." *In re Marmarinos*, 464 B.R. 498, 500 (B.A.P. 1st Cir. 2012). This Court therefore has jurisdiction under 28 U.S.C. § 158(a) to consider Eser's appeal of the Bankruptcy Court's order granting the Trustee's motion for approval of his settlement agreement with the Credit Union. *See* 28 U.S.C. § 158(a)(1) (giving district courts jurisdiction to hear appeals from "final judgments, orders, and decrees" of bankruptcy courts).

On appeal to a district court, "[b]ankruptcy court orders endorsing settlements are reviewed for manifest abuse of discretion." *In re Yacovi*, 411 F. App'x 342, 346 (1st Cir. 2011) (quotation marks omitted); *see also In re Am. Cartage, Inc.*, 656 F.3d 82, 91 (1st Cir. 2011) ("The authority to approve or disapprove a settlement lies within the sound discretion of the bankruptcy court, and we will overturn the exercise of that discretion only upon a showing of abuse."). "In such situations, appellate review operates with the background understanding that settlements are looked upon with favor in bankruptcy proceedings." *In re Am. Cartage*, 656 F.3d at 91. "The task of both the bankruptcy court and any reviewing court is to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Id.* (quotation marks omitted).

7

**DISCUSSION**

The question before this Court is whether the Bankruptcy Court abused its discretion in approving the Settlement Agreement between the Trustee and the Credit Union.[5] In determining whether to approve a settlement agreement, a bankruptcy court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995) (quotation marks omitted). In so doing, it may consider factors such as "the probability of success in the litigation being compromised"; "the difficulties, if any, to be encountered in the matter of collection"; "the complexity of the litigation involved, and the expense, inconvenience and delay attending it"; and "the paramount interest of the creditors." *Id.*; *accord In re Am. Cartage*, 656 F.3d at 92.

The Bankruptcy Court did not abuse its discretion in balancing these factors and approving the Settlement Agreement between the Trustee and Credit Union. It considered the value to the estate of the efficient transfer of the surplus funds to the Trustee, noting that the agreement avoids procedural difficulties, expenses, and delays that might attend ongoing litigation in the interpleader

---

[5] "Under the Bankruptcy Code, standing to appeal from a final bankruptcy court order is accorded only to a 'person aggrieved.'" *Spenlinhauer v. O'Donnell*, 261 F.3d 113, 117 (1st Cir. 2001). "The 'person aggrieved' paradigm, which delimits appellate jurisdiction even more stringently than the doctrine of Article III standing, . . . bestows standing only where the challenged order directly and adversely affects an appellant's pecuniary interests." *Id.* at 117-18. In Chapter 7 cases, the trustee alone, not the debtor, normally has standing to appeal from bankruptcy orders affecting the property of the estate. *Id.* at 118; *In re Karamoussayan*, 658 B.R. 221, 227 (B.A.P. 1st Cir. 2024). There are, however, exceptions to this general rule. As relevant here, a Chapter 7 debtor "may establish standing by adducing sufficient evidence to demonstrate that a successful appeal by the debtor would generate assets in excess of liabilities, entitling the debtor to a distribution of surplus once the bankruptcy case is closed." *In re Karamoussayan*, 658 B.R. at 227 (quotation marks omitted). While this appeal concerns the surplus funds from the foreclosure sale, it is not obvious that Eser's success in this appeal would affect the amount of surplus. But the Court need not decide whether Eser has standing to appeal, because Eser's appeal can be resolved on the merits and the Court can "assume arguendo that [Eser] has standing." *In re Am. Cartage*, 656 F.3d at 86 n.2.

action. The Agreement, the Bankruptcy Court added, advances the interest of the creditors in transferring the surplus funds to the Trustee for distribution, but does not affect the viability of any future claims by the Trustee or Eser concerning the foreclosure. In concluding that the Trustee's balancing of the Settlement Agreement against alternatives fell within the range of reasonableness, the Bankruptcy Court acted well within its discretion.

Eser advances several arguments for overturning the Bankruptcy Court's approval of the Settlement Agreement. Foremost among these is her repeated contention that the foreclosure of the Property was "null and void" due to a series of statutory violations, and that the Bankruptcy Court erred in approving an agreement that allocates proceeds from that invalid foreclosure sale. ECF 28, at 12-13. Eser similarly argues that, in negotiating the Settlement Agreement, the Trustee engaged in misconduct and breached his fiduciary duties. In her view, the Agreement represents an improper attempt to "bypass the Superior Court Interpleader case . . . without Eser being heard on her claims" regarding the foreclosure. *Id.* at 44.[6]

None of these arguments warrants disturbing the Bankruptcy Court's approval of the Settlement Agreement. As the court found, and as the Trustee argues here, the Settlement Agreement concerns only the disposition of the surplus funds at issue in the interpleader action. It does not foreclose challenges that might be available to the Trustee or, conceivably, Eser concerning the propriety of the foreclosure. And it does not even resolve the interpleader action. The Trustee and Credit Union agreed to jointly move to dismiss that case on the basis of mootness, but it would be for the Superior Court to determine whether, notwithstanding the Settlement

---

[6] Eser also raises numerous alleged defects with the Bankruptcy Court's rationale for denying her motion to proceed *in forma pauperis* in this appeal. *See e.g.*, ECF 28, at 29, 42. But the Bankruptcy Court's denial of Eser's motion is not before this Court and has no bearing on this Court's assessment of the merits of her appeal.

9

Agreement, Eser had preserved a challenge to the foreclosure through her answer in that case. Contrary to Eser's belief, the Bankruptcy Court was not required to "assess whether there has been an adjudication by an evidentiary hearing or trial of all matters by the parties for a legal transfer of a valid title to have occurred." *Id.* at 39. Its duty was merely to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re Am. Cartage*, 656 F.3d at 91 (quotation marks omitted); *see In re Servisense.com, Inc.*, 382 F.3d 68, 71-72 (1st Cir. 2004) ("[T]he responsibility of the bankruptcy judge, and [of this Court] on review, is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." (quotation marks omitted)).[7]

Having reviewed all of Eser's arguments on appeal, the Court finds no manifest abuse of discretion by the Bankruptcy Court.[8] Accordingly, the Court will affirm the Bankruptcy Court's conclusion that the Settlement Agreement was within the range of reasonableness and fit for approval.

_____

[7] To the extent Eser seeks and has standing to challenge the creditors' proofs of claim filed in Bankruptcy Court, *see* ECF 28, at 33, she failed to file proper objections pursuant to Fed. R. Bank. P. 3007(a). That rule requires, among other things, that "an objection to a claim and a notice of the objection be filed and served." Fed. R. Bank. P. 3007(a)(1). Nothing in the record indicates that Eser has complied with this rule. *See generally* ECF 2 (Docket in *Eser*, No. 24-bk-10976 (U.S. Bankr. Ct., Mass.)). Accordingly, any arguments based on Eser's opposition to the proofs of claim filed by the Credit Union or Larkin are not properly before this Court.

[8] To the extent Eser seeks to assert a breach of fiduciary duty or similar claim against the Trustee in connection with this appeal, *see* ECF 28, at 45, there is no indication in the record that she has sought and been granted leave from the Bankruptcy Court to pursue such claims. *See Hutchins v. Shatz, Schwartz & Fentin, P.C.*, 494 B.R. 108, 115 (D. Mass. 2013) ("In light of the important role of a trustee in the administration of a bankruptcy estate and the fact that bankruptcy courts appoint trustees, an individual who wishes to pursue an action against a trustee for acts done in his or her official capacity must first seek leave from the court which appointed the trustee." (citing *Muratore v. Darr*, 375 F.3d 140, 143 (1st Cir. 2004))).

**CONCLUSION**

For the foregoing reasons, the Bankruptcy Court's order approving the Trustee's proposed

Settlement Agreement is AFFIRMED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: March 2, 2026